UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT M. SMITH,

    Defendant.
_____/

Case No. 19-cr-20028
Hon. Matthew F. Leitman

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF No. 17)**

Defendant Robert M. Smith is charged with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (*See* Indictment, ECF No. 1.) On September 6, 2019, Smith filed a motion to suppress the firearm that he allegedly possessed. (*See* Mot. to Suppress, ECF No. 17.) The Court held an evidentiary hearing on the motion on November 7, 2019, and the parties thereafter filed supplemental briefs. (*See* Supp. Brs., ECF No. 22, 23.) For the reasons explained below, Smith's motion to suppress is **DENIED**.

## **Findings of Fact**

Based upon the testimony and evidence presented at the evidentiary hearing, the Court finds the following facts:

1. On June 4, 2018, the Genesee County Circuit Court sentenced Smith to a twelve-month term of probation in connection with his convictions for carrying a concealed weapon and retail fraud, third degree. (*See* 11/7/19 Evid. Hearing Tr., ECF No. 20, PageID.72.[1])

2. Smith's state-court Order of Probation provided, among other things, that:

   - 2.4 – "You must not use or possess any controlled substances of drug paraphernalia…";

   - 4.20 – "You must not use any object as a weapon. You must not own, use, or have under your control or area pf control a weapon of any type or imitation of a weapon…"; and

   - 4.24 – "You must submit to a search of your person and property, including but not limited to your vehicle, residence, and computer, without need of a warrant if the field agent has reasonable cause to believe you have items which violate conditions of your probation" (the "Search Condition").

   (Order of Probation, ECF No. 17-2, PageID.50-51.)

---

[1] While the Court is providing record citations in support of some of its factual findings, the Court does not mean to suggest that the testimony or evidence cited after a finding is the sole support for that finding. The findings are based upon the totality of the evidence, and the record citations are primarily for the convenience of the reader.

3. On June 5, 2018, Smith signed the Order of Probation. (*See* 11/7/2019 Evid. Hearing Tr., ECF No. 20, PageID.72.) Before Smith signed the order, his supervising probation officer, Tina Whitten, discussed the above-quoted provisions of the order with him. (*See id.*, PageID.73-74.)

4. During Smith's term of probation, he lived in his parents' home at 5064 Marilyn Drive in Flint, Michigan. (*See id.*)

5. On December 5, 2018, Smith reported to Whitten's office and took a drug test. (*See id.*, PageID.78.) The test came back positive for methamphetamine. (*See id.*)

6. Also on December 5, 2018, Smith's father called Whitten to report that Smith had been using marijuana and was keeping drugs in the house. (*See id.,* PageID.79, 91.) Smith's father also reported to Whitten that Smith's mother had seen a handgun on Smith's bedroom dresser. (*See id.*) Smith's father told Whitten that the gun "could be" or "was" gone now. (*Id.*) Smith's father told Whitten that he wanted probation officers to conduct a check of the residence because he did not want a gun in his house and because he was frustrated with other aspects of Smith's conduct. (*See id.*, PageID.80.)

7. In response to the call from Smith's father, Whitten asked two other probation officers, Mark Drake and Chris Horne, to conduct a compliance

check at the residence that Smith shared with his parents. (*See id.*, PageID.79.) Drake and Horne then proceeded to the Smith residence. (*See id.*, PageID.97-98.) Gene McKinstry went along with Horne and Drake. (*See id.*) McKinstry works for law enforcement and is "embedded" in the same office as Whitten, Horne, and Drake. (*Id.*)

8. When Drake, Horne, and McKinstry arrived at the Smith residence on December 5th, they were greeted by Smith's mother. (*See id.*, PageID.98.) She told them that "earlier in the day," Smith had a gun on a table or the television stand. (*Id.*) She added that Smith was "out of control" and "on drugs." (*Id.*) She also told them that Smith had "just left." (*Id.*, PageID.99.) Smith's father then joined the conversation and told Drake, Horne, and McKinstry that he "wanted something done" about Smith's bad behavior in their house and that "he had enough" of Smith's misconduct. (*Id.*, PageID.99.) Finally, Smith's parents told the officers that Smith had possessed both marijuana and methamphetamine in their home. (*See id.*, PageID.129.)

9. After these initial conversations, Smith's mother showed Drake, Horne, and McKinstry to Smith's bedroom. (*See id.*) After they arrived at the bedroom, Smith's mother pointed out where the gun had been, and she said, "[i]t's not here right now but it was here earlier." (*Id.*, PageID.125.)

10. In the bedroom, Drake, Horne, and McKinstry found some bullets out in the open on a nightstand, a musket pistol in the open on a shelf, and, out in the open on a table, a small quantity of marijuana (consistent with personal use) and a scale that had a razor blade on it. (*See id.*, PageID.99-100, 110-111.) The musket pistol that they found was not the same gun that Smith's mother had seen in his bedroom earlier. (*See id.*, PageID.125.)

11. Drake, Horne, and McKinstry spent between 20-25 minutes searching Smith's bedroom. (*See id.* PageID.113.)

12. When the search of Smith's bedroom ended, Horne called Whitten and asked her to make contact with Smith and to ask Smith to return to the residence. (*See id.*, PageID.100-101, 113-114.) Whitten agreed to do so. (*See id.*, PageID.114.)

13. When Horne completed his call with Whitten, he and Drake went outside of the house in order to check out the unattached garage. (*See id.*, PageID.114-115.)

14. Within seconds of the time that Horne and Drake exited the house, Smith arrived back at the house and backed his Chrysler 300 vehicle into the driveway. (*See id.*, PageID.115-116.) Smith backed his vehicle up to the garage. (*See id.*, PageID.116-117.)

15. When Smith completed backing up to the garage, Drake approached Smith's vehicle and stood near the driver's side door. (*See id.*, PageID.117.) Drake identified himself and told Smith to turn the engine off and exit the vehicle. (*See id.*, Page ID.118.) At the same time, Horne positioned himself in front of Smith's vehicle in a manner that blocked Smith's ability to drive out of the driveway. (*See id.*, PageID.119-120.) Horne stood in front of Smith's car because Horne did not want Smith to leave. (*See id.*, PageID.120.)

16. Once Horne took up his position in front of Smith's vehicle, Horne saw Smith reach into his waistband, remove a black item from the waistband, and place the black item behind the passenger seat on the floor. (*See id.*, PageID.102-103.) After placing the black item behind the passenger seat, Smith exited the vehicle as Drake had directed him to do. (*See id.*, PageID.102.)

17. After Smith exited the vehicle, Horne opened the passenger door, moved the passenger seat forward, and found a pistol and a magazine. (*See id.*, PageID.103.) Horne found these items in the same area of the vehicle into which he saw Smith place the black item he had retrieved from his waistband. (*See id.*)

18. On January 16, 2019, a grand jury charged Smith with possession of a firearm by a felony. (*See* Indictment, ECF No. 1.)

**<u>Analysis and Conclusions of Law</u>**

Smith contends that the Court should suppress the firearm because its discovery was "the fruit of an unreasonable search and seizure." (Mot. to Suppress, ECF No. 17, PageID.41.) More specifically, Smith contends that Drake and Horne discovered the firearm only after they seized Smith in his driveway – by blocking his ability to leave the driveway and ordering him out of his vehicle – and he contends that Drake and Horne lacked a lawful basis for that seizure. The Government counters, among other things, that Drake and Horne had a sufficient basis to seize Smith immediately upon encountering him in the driveway, that the seizure was thus lawful, and that the discovery of the firearm was therefore not the fruit of an unreasonable seizure and search. The Court agrees with the Government.

Smith contends that Drake and Horne lacked the authority to seize him in the driveway because such a seizure was not authorized by the Search Condition in the Order of Probation.[2] Smith acknowledges that under that condition – which Smith concedes is reasonable and lawful – Drake and Horne had the right to search his

---

[2] As quoted above, the Search Condition provides that Smith "must submit to a search of [his] person and property, including but not limited to [his] vehicle … without need of a warrant if the field agent has reasonable cause to believe [he] ha[s] items which violate conditions of [his] probation." (Order of Probation at ¶4.20, ECF No. 17-2, PageID.51.)

7

person and vehicle if they had reasonable suspicion to believe that he possessed any of the items that the Order of Probation prohibited him from possessing. (*See* Smith Supp. Br., ECF No. 22, PageID.157-160.) But Smith contends that at the moment Drake and Horne blocked him from leaving and ordered him out of his car, they did not have such reasonable suspicion. (*See id.*)

"Reasonable suspicion" is "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Prado Navarette v. California,* 572 U.S. 393, 396 (2014)). It requires more than "an inchoate and unparticularized suspicion or hunch," *Terry v. Ohio*, 392 U.S. 1, 27 (1968), but it is "obviously less demanding than probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Likewise, reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." United *States v. Arvizu*, 534 U.S. 266, 274 (2002).

Here, at the moment Drake and Horne first encountered Smith in the driveway, a series of specific and objective facts suggested that he was in possession of two items that were prohibited under the Order of Probation: a gun and methamphetamine. With respect to the gun: (1) earlier in the day, Smith possessed a gun in his bedroom; (2) Smith left his bedroom and left his residence shortly before Drake and Horne arrived at the house; (3) after Smith's recent exit, the gun was no longer in his bedroom; and (4) Smith returned to the residence within roughly thirty

minutes of his departure.[3] These specific facts are sufficient to support reasonable suspicion that Smith took the gun out of his bedroom and residence when he left and that – since he was gone for a relatively short period of time – he still had the gun in his possession when he returned. While it is certainly possible that Smith could have discarded the gun while he was away from the residence and/or before he left the residence, the circumstances supported a reasonable belief – far more than just a hunch – that he was still in possession of the weapon upon his return home.

Similar reasoning applies with respect to the methamphetamine. By the time Drake and Horne encountered Smith in the driveway: (1) Smith had tested positive for methamphetamine earlier the same day; (2) Smith's parents told them that Smith was on drugs and had possessed methamphetamine in their house; (3) a search of Smith's bedroom did not reveal methamphetamine but did reveal a scale with a razor blade that was consistent with drug distribution; and (4) again, Smith was gone from the residence for a short period of time. The specific facts showing Smith's recent use and possession of methamphetamine in the residence, coupled with the absence

---

[3] As noted in the factual findings above, when Drake and Horne arrived at the Smith residence, Smith's mother told them that Smith had "just left." Horne then testified that upon entering the residence, he and Drake went directly to Smith's bedroom, searched there for between 20-30 minutes, and then exited the residence and began heading toward the garage. Finally, Horne said that he and Drake encountered Smith almost immediately upon exiting the house. Based upon this time frame, it is reasonable to conclude that Smith was away from his house for roughly thirty minutes.

9

of the drug from his bedroom and evidence consistent with the possession of drugs for distribution, support reasonable suspicion that he had taken the methamphetamine with him (perhaps to sell) when he left the residence and that he still possessed it when he returned.

For all of these reasons, at the moment Drake and Horne encountered Smith in the driveway, there was reasonable suspicion to believe that, in violation of the Order of Probation, he possessed both a firearm and methamphetamine. As Smith acknowledges, under the Search Condition of the Order of Probation, such reasonable suspicion was sufficient to justify the search of him and his vehicle.[4] Thus, the discovery of the firearm in Smith's car was not the fruit of an unreasonable seizure and/or search, and suppression of the firearm is not warranted.

Accordingly, **IT IS HEREBY ORDERED** that Smith's motion to suppress is **DENIED**.

Dated: January 29, 2020

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

---

[4] As the Government correctly observes, in order for Drake and Horne to search Smith – which, as described above, they had the right to do upon first encountering him – they necessarily had to seize him. Thus, the seizure in the driveway was lawful.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 29, 2020, by electronic means and/or ordinary mail.

                                              s/Holly A. Monda
                                              Case Manager
                                              (810) 341-9764